## STANDARD OIL COMPANY *v.* RICE.

[No. 24,056.    Filed December 16, 1924.    Rehearing denied· February 26, 1925.]

1. VENDOR AND PURCHASER.—*Option to Purchase.—Waiver of Right to Rescind.*—A reservation in an option contract to purchase real estate of the purchaser's right to rescind the contract, if, before consummation, it should be prohibited from making a contemplated use thereof, being for the benefit of the purchaser, could be waived by it.  p. 657.

2. VENDOR AND PURCHASER.—*Option to Purchase.—Waiver of Right to Rescind.*—The right to rescind an option to purchase real estate was waived by accepting the option in writing within the time allowed, notifying the vendor that her title was satisfactory, arranging for payment, taking possession, making substantial alterations tending to the. consummation of its purpose in purchasing the property, which would necessarily depreciate the value of the property for the vendor's use, such acts being inconsistent with a continued right to terminate the contract of purchase and inconsistent with an intention to rely upon it.  p. 657.

3. SPECIFIC PERFORMANCE.—*Complaint for.—Sufficiency of.*—A complaint by a vendor for specific performance which stated facts showing that a reserved right to annul a contract of purchase had been effectually waived by defendant's acts was sufficient without alleging that the defendant did not thereafter elect to annul it or that the conditions under which it originally reserved the right to annul it did not afterward arise.  p. 658.

4. SPECIFIC PERFORMANCE.—*Purchase of Property.—Facts Justifying Decree for Vendor.*—Purchaser's taking possession of real estate pursuant to a contract for its purchase and doing acts of ownership which tended to alter the nature and future use thereof, which an owner might have restrained by injunction, such as cutting down trees, destroying permanent improvements and installing others in their stead, afforded sufficient basis for decreeing specific performance by the purchaser and requiring that the purchase money should be paid upon full performance by the vendor.  p. 658.

5. VENDOR AND PURCHASER.—*Purchase for Specific Purpose.— Passing of Ordinance Prohibiting Such Use.*—In a suit by a vendor for specific performance of the contract of purchase, a. paragraph of answer alleging that the property was purchased for a gasoline filling station, which fact was known by the vendor, that after the defendant had taken possession, cut down trees, torn up a sidewalk and constructed a driveway in-

stead, the common council of the city in which the property was located passed an ordinance which prohibited such use, did not state a defense to the action and a demurrer thereto was properly sustained.   p. 658.

From Bartholomew Circuit Court; *John W. Donaker,* Judge.

Suit by E. Kate Rice against the Standard Oil Company for specific performance.   From a decree for plaintiff, the defendant appeals.   *Affirmed.*

*Thomas E. Davidson* and *Miller, Dailey & Thompson,* for appellant.

*Baker & Richman,* for appellee.

EWBANK, J.—This is an appeal from a judgment decreeing that the defendant (appellant) should pay to the clerk of the Bartholomew Circuit Court for the use of plaintiff (appellee) the agreed purchase price for a designated lot in the city of Columbus, with interest, in the total sum of $9,405, and that thereupon the clerk should deliver to defendant a deed for the lot, executed by plaintiff, and the key to the house thereon situated, both of which had been deposited with him by plaintiff. The errors assigned are overruling a demurrer to the complaint and sustaining a demurrer to the second paragraph of the answer.

In substance, the complaint alleged that plaintiff was the owner of said lot, on which were four mortgages given by her in the total amount of $6,250, besides current taxes; that on March 15, 1920, she executed to defendant an option in writing, which recited that, in consideration of $1 paid to her, she granted to defendant the option of purchasing said lot "at any time within ninety days from the date hereof, for the sum of $9,000, and said vendor agrees that in the event this option is exercised she will convey a merchantable title to said real estate by good and sufficient warranty deed,

and free from all incumbrances whatsoever, and will furnish a merchantable title to said land in said vendor, free from all liens and incumbrances, brought down to the date of conveyance. *Provided,* however, that if said Standard Oil Company is unable to obtain an ordinance or permit from the proper authorities to conduct its business upon said premises, or if such an ordinance or permit, if obtained, shall be revoked prior to the consummation of the purchase of said premises, this option may, at the election of said Standard Oil Company, become null and void, and said Standard Oil Company shall be relieved of all liability thereunder." That thereafter defendant obtained a building permit to erect a filling station on said premises, and learned by inquiry that there was no ordinance forbidding it to do so, and thereupon, after the expiration of forty-five days, on May 1, 1920, exercised its option by delivering to plaintiff a written statement notifying her of its acceptance of and intention to exercise the option given it by her to purchase said lot (describing it), "subject to the conditions outlined in the option." That about May 15, 1920, plaintiff had prepared, at her expense, and furnished to defendant, an abstract of her title, which defendant examined, after which its agents told plaintiff that they had a check for $9,000 made out to her for the purchase money, but wished her to induce the tenant to surrender possession of the house, because she would have less difficulty to obtain such possession, and that she might pay off liens concurrently with the delivery of the deed. That, at defendant's request, plaintiff procured the tenant to agree to vacate said house on or before September 1, 1920, a month before his lease would expire, and he did vacate it before said date. That after plaintiff had procured the tenant to make said agreement, the defendant, on July 28, 1920, entered into possession of said premises, cut down two

large and valuable maple trees, one on each of the two intersecting streets, tore up and removed a large part of the cement sidewalk and curbing in front of the house in each of said streets upon the premises, and replaced them with wide concrete driveways extending from the roadway to the inner line of the sidewalk along said premises, at an expense to defendant of $450. That, after the tenant moved out, plaintiff delivered to the trust company, through which the matter had been negotiated, a warranty deed to defendant for the lot, with directions to deliver it to defendant upon receipt of the purchase price, and out of the same to pay the taxes and incumbrances, and so notified defendant by letter. That afterward, on September 21, 1920, plaintiff tendered the deed and key to defendant, but it refused them. That plaintiff had performed all the conditions respecting the purchase of said real estate by her to be performed, and now brought into court said deed and key for delivery by the court to defendant, and consented to the application of so much of the purchase price as might be necessary to satisfy and discharge the said liens.

The demurrer was on the ground that the complaint did not state facts sufficient to constitute a cause of action, in that (1) it showed the acceptance of the option to be "subject to the conditions outlined in the option," and did not negative the possibility that defendants' right to conduct its business on said premises may have been taken away, by ordinance or otherwise, and defendant may have elected to terminate its liability for that reason, and (2) did not show that defendant had the legal right at all times up to August 30, 1920, when plaintiff tendered the deed and key, to conduct its business on said premises; and (3) that the facts averred showed that plaintiff had an adequate remedy at law.

.The option contract reserved to defendant a right of election to annul the preliminary contract in case the city, "prior to the consummation of the pur-

1, 2. chase," should enact an ordinance forbidding the purchaser "to conduct its business upon said premises." But without regard to what acts would or would not constitute a "consummation of the purchase," it is obvious that this was a condition for the benefit of the purchaser, which it could waive. And we think that accepting the option in writing within the time allowed, and thereafter, when the option period had expired, notifying the vendor that her title, as shown by the abstract, was satisfactory, and that a check in her favor for the purchase money had been drawn which would be delivered when the tenant moved out, and thereby inducing the vendor to procure the tenant to vocate before his lease expired, taking possession subject to the leasehold of the tenant as thus shortened, and, under a permit obtained from the city, making substantial alterations by cutting down trees, tearing up sidewalks and curbs, and putting in cement driveways from the roadways of the streets, across the parkways and sidewalks, to the property line, constituted an effectual waiver of the vendee's right of election to annul the contract because of what the city council might afterward do. Acts of ownership voluntarily done by the purchaser, with full knowledge of all pertinent facts, which acts were inconsistent with a continued right to terminate its contract of purchase, and inconsistent with an intention on its part to rely upon it, amounted to the waiver of a condition giving it such right. Bishop, Contracts (2d ed.) §792.

Having stated facts which showed that the reserved right to annul the contract of purchase had been effectually waived by defendant's acts, it was not neces-

sary to allege in the complaint that defendant did not thereafter elect to annul it, or that the conditions under which it originally reserved the right to annul it did not afterwards arise.

Taking possession of real estate pursuant to a contract for its purchase and doing acts of ownership which tended to alter the nature of the property, and which an owner might have restrained by injunction, such as cutting down trees, tearing out permanent structures and installing others in their stead, afforded sufficient basis for decreeing specific performance of the contract, and requiring that the purchase money should be paid upon full performance by the vendor. *Cutler* v. *Simons* (1816), 2 Mer. (Eng. Ch.) 102; *Bastian* v. *Crawford* (1914), 180 Ind. 697, 700, 103 N. E. 792.

In *Cutler* v. *Simons, supra,* the contract gave the purchaser the right of immediate possession upon payment of a deposit, and he had paid the deposit and taken possession of two tracts or lots into which the land sold had been divided. Upon a showing that he "had committed various acts of ownership on the premises, viz.: that he had taken possession, plowed up part of the meadow land, filled in ditches, grubbed up hedges, and formed both of the estates sold as lots 22 and 23 into one," an order was made that the purchase money be paid into court on or before the first day of the next term. The complaint in the case at bar stated a cause of action, and no error was committed in overruling the demurrer thereto.

The second paragraph of answer alleged, in substance, that defendant was engaged in operating "drive-in service" filling stations for the supply of gasoline to motor vehicles, and negotiated for the purchase of plaintiff's premises for use in that business only, and that plaintiff knew said fact; that

after plaintiff had obtained a permit from the city, and had begun the work of constructing the necessary approaches and driveways to be used in the conduct of said business, on August 2, 1920, the common council of the city of Columbus passed an ordinance, which was duly published and took effect as law on August 11, 1920, and had been continuously ever since in force, which forbade the location of gasoline service stations within certain prohibited areas that embraced the real estate in question; and that, thereupon, defendant, on August 19, 1920, notified plaintiff that it would not purchase her property, and returned the abstract; that said premises were unsuited to the conduct of defendant's business, except by using them in a manner forbidden by the ordinance, and that defendant was prevented from so using them solely by reason of the passage of said ordinance, and not by any act or default on its part. It will be observed that the ordinance was not passed nor was the notice that the purchase would not be completed given until after plaintiff, at defendant's instance, had procured from the tenant an agreement to vacate before the end of his term, and after defendant had taken possession and made alterations that might have been enjoined unless made by it as owner, which alterations tended to change the nature of the real estate from residence to business property. As we have seen, by these acts, defendant had waived its reserved right to annul the contract of purchase before the notice that it elected to do so was served on plaintiff. No error was committed in sustaining the demurrer to this paragraph of answer.

The judgment is affirmed.